## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. JOHN HAWK.

### Decided July 4, 1902.

**1.—Master and Servant—Railroad's Negligence—Charge.**

A charge that an employe riding on a work train assumes the dangers ordinarily incident to travel on such trains, but does not assume any dangers on account of the negligent equipment and operation of the train, was correct, and was not objectionable as assuming that the defendant railway company was negligent in these respects.

**2.—Same—Riding on Work Train.**

Where the action was for injuries to an employe while riding on a work train, the liability of the railway company was limited to the exercise of ordinary care in the operation and equipment of the train. See charge held to properly define negligence in such a case, and that was not erroneous as making it the absolute duty of the railway company to have the train properly equipped and operated.

**3.—Same—Negligence—Accident—Charge.**

Where the evidence showed that the injury to plaintiff was due to the sudden stopping of the engine, causing a link in one of the couplings to part, and defendant offered no testimony explaining the cause of the accident, a charge was warranted upon the theory of negligence in the equipment and operation of the train.

**4.—Personal Injury—Allegation and Proof.**

Where the petition alleged injury by a shock to the nervous system, this was sufficient to admit testimony by an expert that such a shock produced a lower state of vitality, causing a defect of hearing, impairment of speech, and injury to the eyesight.

**5.—Same.**

Where the petition alleged injury to the spine, it was admissible to show the effect of such an injury on the sense of hearing.

**6.—Same—Rebuttal Evidence—Complaint of Injury.**

Where the defendant company introduced testimony that plaintiff, an employe, made no complaint as to injuries received while he remained in its service, evidence of statements by plaintiff, some time after the accident, complaining of being hurt and suffering pain, was admissible in rebuttal.

**7.—Same.**

Evidence that an employe of defendant reporting that he was injured would have to execute a release of his claim for damages before returning to work was admissible as tending to show a reason for plaintiff's failure to make complaint to defendant of his injuries.

**8.—Same—Hypothetical Case.**

The testimony of the physician, who had already testified fully about plaintiff's injuries and his examination, and who had been asked in the form of a hypothetical case as to the cause and result of the injuries, that the injury received by plaintiff would cause the condition he was in, was admissible, and was not objectionable as calling for the conclusion of the witness on an issue to be determined by the jury. In the absence of any showing as to what the hypothetical case was, it will be presumed that such question was justified by the facts of the case in evidence.

**9.—Verdict—Impeachment by Juror.**

The affidavits of jurors will not be heard to impeach their verdict by showing that it was reached by lot.

Appeal from the District Court of Hunt County. Tried below before Hon. H. C. Connor.

*T. S. Miller* and *John T. Craddock,* for appellant.

*Evans & Elder,* for appellee.

RAINEY, CHIEF JUSTICE.—Suit by appellee to recover damages for personal injuries alleged to have resulted from the negligence of appellant.

*Conclusions of Fact.*—On or about the 11th day of July, 1899, John Hawk was in the service of the Missouri, Kansas & Texas Railway Company of Texas, in the B. and B. department, and had been so engaged for about twelve months. He belonged to what was known as the "iron gang," that did nothing but build and repair iron bridges. There were ten or twelve men in the gang besides the foreman, A. L. Rockwell. They slept and took their meals in boarding cars, and their work was not confined to any particular division of the road, but extended to all of defendant's lines whenever occasion might require.

They were not transported from one point to another by any particular engine or train crew, but "just the first train that came along when we were ready to move, would be the one to take us." Plaintiff was a strong, robust, and healthy man, 26 years old, weighed 180 pounds, and had never been sick or received an injury prior to that date. He was learning the special trade of riveting, for which he was paid $2.50 per day. There had been a washout on the Brazos River on defendant's road, and all the bridge gang and a great number of section men had been concentrated at that point for the purpose of repairing the road, consisting of about 100 men, all working under one general foreman, Mr. Abergast.

The boarding cars were located at Sealy, several miles from the

washout. On that morning plaintiff, in company with about 100 other men, was being carried from Sealy on a work train, consisting of ten or twelve cars, loaded with all kinds of repairing material, such as bridge timbers, ties, rails, etc., to the washout. They were going out to put in some cribbing in the water for a foundation for the track. It was the first work of the kind that plaintiff had ever done. Their point of destination was 300 or 400 yards south of the Brazos River, and this was plaintiff's first trip across the river.

When they reached a point within 200 yards of where they intended to work that day, the defendant negligently and carelessly caused said train to separate and become uncoupled, dividing it into about two equal parts, the plaintiff being on the detached portion; that that portion began rapidly to increase in speed, placing plaintiff in great peril, necessitating his jumping from the train, causing the injuries complained of. The uncoupling of the train arose from the sudden stopping of the engine which severed a defective coupling pin, which appellant had negligently supplied.

When plaintiff jumped from the train he struck and fell with great force and violence on some crossties, bruising, lacerating, straining, and injuring his back, hips, hip joints, spinal column and head, pelvic and perineal region; shocking and injuring his nervous system, affecting and impairing his heart's action and hearing, and destroying his sexual power and ability to perform the sexual act; injuring and impairing his general health, causing him great physical and mental pain, and his injuries were permanent.

*Opinion.*—The following paragraph of the charge of the court is assigned as error, viz: "An employe who rides on a work train assumes the dangers ordinarily incident to travel on such trains, but does not assume any dangers on account of the negligent operation and equipment of such train," the objection being that it assumes that defendant was negligent in the operation and equipment of the train. The objection is not tenable. It stated a correct principle of law and was followed by a proper charge applying it to the facts of the case.

The following paragraph of the court's charge is also assigned as error, viz: "If you believe from the evidence that at the time of the alleged injury the plaintiff was riding on a work train; and if you further believe that the train was properly equipped and operated and that the injuries, if any, were the ordinary and reasonable result incident to the operation of such train, then, in that event, the plaintiff assumed such risk and can not recover herein; but if you believe said train was being operated at a dangerous rate of speed and was suddenly stopped, or was not equipped with reasonable sufficient couplings; and you further believe that the employes of defendant in charge of said train were guilty of negligence in the operation and equipment of said train; and if you believe that plaintiff's injuries, if any, were the result of such negligence, if any, then in that event the plaintiff did not assume the

dangers, if any, incident to such negligence." The objection to this charge is that "by such charge it is made the duty of defendant to see that said train was properly equipped and operated, and in that respect it is more onerous than required by law, it being the legal duty of the defendant to exercise ordinary care only in the operation and equipment of the train." The liability of the defendant under the law is limited to the exercise of ordinary care in the operation and equipment of its trains, and we think the charge so limited it. To authorize a recovery the jury were told that they must "believe that the employes of defendant in charge of said train were guilty of negligence in the operation or equipment of said train," and that they must believe plaintiff's injuries "were the result of such negligence." The court in a preceding paragraph of the charge had properly defined negligence. The charge, when considered as a whole, fairly presented the issues to the jury, and said assignment is not well taken.

Another objection urged to the above quoted paragraphs of the charge is that they were not warranted by the evidence. The proposition advanced is: "The servant suing to recover of the master for injuries alleged to have been caused from a defective appliance must show that the appliance was in fact defective, and proof merely that such appliance gave way is insufficient to justify the submission of negligence or not of the master as to such appliance to the jury." "It is a general rule that when a servant sues his master or employer for damages arising from injuries caused by the negligence of the latter, the plaintiff must prove the negligence of the defendant, and that proof of the accident and injury alone will not be sufficient to authorize a recovery. However, it is well settled by authority that the circumstances attending the injury may be sufficient to establish the fact of negligence without any direct proof thereof." McCray v. Railway, 89 Texas, 168, 34 S. W. Rep., 95. The evidence shows that the injury to plaintiff was occasioned by the sudden stopping of the engine and causing a link in one of the couplings to part. The plaintiff had no connection whatever with the operation or make up of the train. The management and control of the train was under other employes. It was the duty of appellant to have provided reasonably safe appliances for the operation of such train, and the employes should have used ordinary care in its operation. No attempt was made by defendant to account for the accident or show that any care had been exercised in providing a reasonably safe coupling. Plaintiff was not in a position to show by direct evidence the negligence of defendant. Justice Brown, in McCray v. Railway, supra, quotes with approval from Scott v. Dock Company, 3 Hurlston & Coltman, 596, as follows: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of defendant, or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the

absence of explanation by the defendant, that the accident arose from want of care." The circumstances surrounding the accident warrant the conclusion that defendant was guilty of negligence in not providing a proper coupling, or in operating the train, or both, and there was no error in submitting that issue to the jury. McCray v. Railway, supra.

The admission of certain testimony of witness Peak was objected to because immaterial and irrelevant, and because not authorized by the pleadings, as shown by the following bill of exceptions, to wit: "Be it remembered that on the trial of the above entitled cause, and while Dr. P. A. Peak, a witness for the plaintiff, was upon the stand, he was asked by the plaintiff's counsel if the shock to the plaintiff by the blow he received would affect his nervous system, to which he answered in the affirmative. Whereupon he was asked the further question: 'Now, then, tell the jury how you know that, and what are the symptoms of nervous prostration?' To which the witness answered as follows: 'Well, the symptoms are indicated by the lower state of vitality present in the patient.' The witness was then asked the further question: 'What does the lower state of vitality consist of?' To which he replied, 'A defective hearing, impairment of speech.' Whereupon the defendant moved the court to exclude from the jury the witness' evidence with reference to impairment of speech, for the reason that there is no pleading to justify it, which motion being by the court overruled, the defendant then and there excepted to the action of the court. Witness was then asked, 'How about the eyesight or taste?' to which question the defendant also objected because there was no foundation in the pleading for such testimony, which objection was by the court overruled and the witness permitted to answer that a blow received on the part of the body where the plaintiff was hurt would be transmitted to the brain, where the center of the five senses were located and would consequently affect and impair them,—to which action of the court in permitting the witness to so testify over the objection of the defendant and in refusing to exclude said testimony, the defendant then and there excepted, and now here tenders this, its bill of exception number 7, and asks that the same be approved and filed as a part of the record in this cause." The court approved the bill with the following explanation: "There was an allegation in the plaintiff's petition for injury to the nervous system, and this testimony was admitted for the purpose of showing whether or not there was any injury to the nervous system, and the witness had previously testified that an injury to the nervous system would be indicated by injury to the five senses, and I stated at the time in the presence and hearing of the jury that the testimony was offered for the purpose of showing whether the nervous system had been affected." The allegations in the petition as to the appellee's injury were that he "struck with great force and violence on some crossties beside the railroad track, bruising, lacerating, straining, and injuring his back, hips, hip joints, spinal column and head, and

straining, bruising and lacerating him in his pelvic and perineal region, shocking and injuring his nervous system, affecting and impairing his heart's action, greatly impairing his hearing, impairing and destroying his sexual power and ability to perform the sexual act, and injuring and impairing his general health." We are of the opinion that the evidence complained of shows the result of a shock to the nervous system, and was admissible under plaintiff's allegations.

The testimony of witness Cook as to the effect an injury to the spine would have on the sense of hearing was admissible. Injury to the spine was alleged, and evidence showing results naturally flowing therefrom was admissible.

Complaint is made of the testimony of several witnesses introduced by plaintiff as to statements they heard plaintiff make some time after the accident, complaining of being hurt and suffering pain, 'the objection being that such testimony was hearsay and self-serving. Appellant attempted to show that plaintiff was not injured by the accident, and prior to the introduction of said testimony defendant had proven by some of his witnesses that plaintiff had made no complaint as to injuries received while he remained in the service of appellant, either to the foreman or other employes. We think the testimony was admissible in rebuttal, and the court did not err in so ruling.

Dr. Peak, an expert witness, was asked by appellee's counsel the following question, viz: "I will ask you from the history of this case, as I have detailed it to you, if the condition you find him suffering with, if that fall or injury received by him likely caused the condition he now has?" This was objected to as calling for the conclusion of the witness as to an issue which should be alone determined by the jury. The objection was overruled and the witness answered, "I think it could have done it." A bill of exception was reserved by appellant, to which the court appended the following: "This answer was given after plaintiff's counsel had examined the witness fully about plaintiff's injuries, his examination, etc., and after plaintiff's counsel submitted to him in the form of a hypothetical case the cause and result of the injury." The plaintiff was entitled to the opinion of the witness on a hypothetical case based upon his theory of the evidence. There is nothing in the bill of exception showing what the hypothetical case was, in the absence of which it will be presumed that it was justified by the facts of the case. The question can not be presumed to have been based upon conflicting evidence calling for an opinion as to which was correct, as was the case in Armendiaz v. Stillman, 67 Texas, 458. That case authorizes the opinion of an expert when based upon a hypothetical case made upon a state of facts which the evidence of the party offering it justifies. The evidence was properly admitted.

The evidence of witness Rockwell, to the effect that an injured employe of the defendant and one reporting that he was injured would have to execute a release of his claim for damages before returning to work, was properly admitted. It tended to show a reason for plaintiff's

not making complaint of his injuries to the company. Besides, Rockwell had previously given practically the same character of evidence without objection.

The affidavits of jurors will not be heard to impeach their verdict by showing that they reached their verdict by lot.

The evidence is sufficient to support the verdict, and there being no reversible error in the record, the judgment is affirmed.

.                                                                    *Affirmed.*

Writ of error refused.