HOUSTON & T. C. RY. CO. v. FOX et al.

(Court of Civil Appeals of Texas. Dallas. April 26, 1913. Rehearing Denied May 17, 1913.)

1. DAMAGES (§ 166*)—EVIDENCE—ADMISSIBILITY—INJURIES TO PASSENGERS.

In an action against a railroad company for damages for injuries to female passenger who claimed that, because of defendant's negligence, she fell and injured her back, which injury continued latent for a long time and at last wholly undermined her health, evidence of the possibility that such an injury would not show itself immediately is competent, where the carrier insisted that her present condition was caused by some later injury or illness and that she was not hurt by the shock.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 478, 479, 481; Dec. Dig. § 166.*]

2. EVIDENCE (§ 527*)—OPINION EVIDENCE—EXPERT.

Ordinarily even an expert witness cannot state what in his opinion might possibly ensue from a given state of facts, but is confined to those things which are reasonably probable.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2334, 2335; Dec. Dig. § 527.*]

3. EVIDENCE (§ 558*)—OPINION EVIDENCE—CROSS-EXAMINATION OF EXPERTS.

In an action against a railway company for injuries to a female plaintiff, whom the carrier claimed was not hurt by a fall induced by the sudden stopping and starting of the train, but was suffering from some later ailment or injury, where a physician testified for the defense that after the accident he examined her for life insurance and did not notice any ailments and none were spoken of, he may properly be cross-examined as to whether the injuries could not have continued latent for a long time and then developed; such questions being proper to test his skill and knowledge.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2377, 2379; Dec. Dig. § 558;* Witnesses, Cent. Dig. § 932.]

4. TRIAL (§ 62*)—RECEPTION OF EVIDENCE—REBUTTAL—DECLARATIONS.

In an action against a railroad company for damages for injuries to a female plaintiff, whom the company claimed was not injured by a fall caused by the sudden stopping and starting of the train, but was suffering from a subsequent ailment, where evidence was given that she had not complained of any injuries at the time or shortly after the accident, evidence of her declarations to the contrary is competent in rebuttal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 148–150; Dec. Dig. § 62;* Carriers, Cent. Dig. § 1306.]

5. CARRIERS (§ 318*) — INJURIES TO PASSENGERS—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action against a carrier for damages for injuries received by female plaintiff, evidence held sufficient to support the verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

Appeal from District Court, Hunt County; R. L. Porter, Judge.

Action by R. L. Fox against the Houston & Texas Central Railway Company and another. From a judgment against the named defendant, it appeals. Affirmed.

Dinsmore, McMahan & Dinsmore, of Greenville, for appellant. Evans & Carpenter, of Greenville, for appellees.

TALBOT, J. Appellee, Fox, brought this suit against the Gulf, Colorado & Sante Fé Railway Company and the appellant, Houston & Texas Central Railway Company, to recover damages for personal injuries sustained by his wife, Mrs. Mary Fox, while she was a passenger en route from Celeste, Tex., to Bertram, Tex. Each of the defendants answered by general demurrer, general denial, and pleas of contributory negligence on the part of the appellee's wife. A jury trial resulted in a verdict and judgment in favor of appellee against the appellant for the sum of $10,000, and in favor of the Gulf, Colorado, & Santa Fé Railway Company. From the judgment against it, the appellant appealed.

No question is raised about the pleadings and further statement of them is unnecessary. The evidence is sufficient to show that on or about the 22d day of December, 1910, Mrs. Fox, appellee's wife, bought a through ticket at Celeste, Tex., entitling her to passage from that place over the road of the Gulf, Colorado & Santa Fé Railway Company to Dallas, thence over appellant's road to Hearne, Tex., where Mrs. Fox changed cars to continue her journey. As the train approached Hearne, which was about 2 o'clock in the night, the station was announced and the train stopped. Mrs. Fox, accompanied by her little boy about 10 or 11 years of age, arose from her seat and started to leave the train. After taking a step or two towards the car door, the train was negligently moved with a sudden jerk or lunge forward and

then backward, almost at the same instant of time, which threw Mrs. Fox off her balance and to the floor of the car, seriously injuring her. She testified: "I was thrown down and I fell forward in kind of a careen. I lay there some little bit of time. I felt a severe pain strike me, especially in the small of my back, and it seemed to me like it run all over me, and it seemed to me like it hurt me all over; I lay there for some bit of time, kind of numb or something; at the same time I didn't hardly realize what was going on for some little bit of time; my little boy came to me and he had hold of me the first thing I knew, and he says, 'Ma, are you hurt?' I told him * * * I was nearly killed." Mrs. Fox further testified that her son helped her up and that they went out of the car and into the station house, where she stayed until about 11 o'clock forenoon of that same day, when she took another train and continued her journey to Bertram, still suffering from her injury. Mrs. Fox was 51 years of age at the time of the accident, and was a strong and vigorous woman for her age.

[1] Appellant's first, second, third, fourth, and fifth assignments of error raise the same question of law in different ways, and are presented in the brief together. They charge that the court permitted the plaintiff, over the objection of the defendant, to prove by the witness Dr. Pearson matters relating to injuries to plaintiff's wife which were purely speculative and bare possibilities. We quote as fair samples of the questions asked and objected to the following:

(1) "Now this woman might have been suffering with a pain in her back right at the time you took those answers that might have resulted in the condition she is in, may it not, Doctor?" To which the witness replied, "There might be some pain."

(2) "Isn't it true, and isn't it an accepted theory among doctors, and observation by all good physicians, that an injury to the spine might go along for months before it developed into a serious injury, practically unnoticed by the parties themselves, and then develop into a serious injury?" Answering this question, the witness said: "In a normal life and a healthy person it would be apt to go along a good while." It seems that it was the theory of the plaintiff that his wife from the date of the accident suffered with her back and head intermittently, but on account of her strength and good general health the effects of the injury complained of were slow and gradual, resulting finally in the complete and permanent destruction of her health. On the other hand, the defendant's theory seems to have been that Mrs. Fox in fact received no injury of any consequence at the time alleged; that the claim of injury at that time was an afterthought; that the emaciated and feeble condition of Mrs. Fox, apparent at the date of the trial, was due wholly to some cause arising shortly before or about the time of the institution of this suit other than the alleged sudden violent movement of defendant's train at Hearne, and offered testimony in support of this theory.

In this connection Dr. Pearson, being called by the defendants, testified: "I made an examination last year of Mr. and Mrs. Fox, at their home, for life insurance; Mrs. Fox's appearance then, as to health and strength, was good, normal, I would think. I think it was about the middle of April of last year I made this examination. I had called and seen Mrs. Fox before this transaction; at that time there was no difference in her general appearance as to her health and strength and to what it had been before that time that I could see; at that time, while I was making the examination, Mrs. Fox nor Mr. Fox did not say anything about the injury which Mrs. Fox claimed to have received. In the conversation they said they were each in good health. They asked me if I thought they would pass, and I said they would; it is hard to remember just exactly what they said about the state of their health, but, in substance, one of them asked me if I thought they would pass, and I said, 'Sure you will pass. You could carry any amount of insurance you are able to pay for, so far as your condition is concerned, if your age would allow.' * * * At that time I did not observe myself any indication, from her appearance, of any disease or hurt and received no information from either at the time of any disease or hurt." The testimony sought to be elicited by the questions under consideration was clearly competent in view of that offered by the defendants, and we do not understand that appellant contends that it was not.

[2] The contention is that the form of the question is such as to elicit an answer concerning injuries to plaintiff's wife which were "purely speculative and related to bare possibilities." It is well settled in this state, and that ordinarily even an expert witness should not be permitted to state what, in his opinion, may possibly ensue from a given state of facts. He must be confined to those things which are reasonably probable. Railway Company v. Harriet, 80 Tex. 73, 15 S. W. 556; Railway Company v. Powers, 101 Tex. 161, 105 S. W. 491; Railway Company v. Garrett, 99 S. W. 162.

[3] We are of opinion, however, that the questions here complained of fall within the rule announced in the cases hereinafter cited. Dr. Pearson, introduced as a witness by the defendants, had testified on direct examination that some three or four months after the accident to plaintiff's wife he examined her for life insurance; that Mrs. Fox's appearance then, as to health and strength, was good, normal; that while he was making the examination neither Mrs. Fox nor plain-

tiff said anything about the injury claimed to have been received by Mrs. Fox; that at the time of this examination he did not observe himself, from Mrs. Fox's appearance, any disease or hurt, and received no information that she had been hurt or was suffering from any disease. The questions objected to were propounded on cross-examination of an expert witness; they were pertinent to the issue made by the testimony of the witness on his direct examination, and, under several decisions of this court in which writs of error were denied, were proper to test the skill, knowledge, or accuracy of the witness. This seems to be true whether the opinion of the expert is based on an actual examination or a hypothetical question. Railway Company v. Johnson, 49 S. W. 265; Railway Company v. Dalton, 56 Tex. Civ. App. 82, 120 S. W. 243; Railway Company v. Farris, 126 S. W. 1174.

[4] The sixth assignment of error, and others grouped in the brief with it, assert, in effect, that the court erred in permitting the plaintiff to prove by Mrs. Fox and other witnesses that she (Mrs. Fox), after the alleged injuries to her, stated that she was, on the occasion in question, hurt by the movement of appellant's train substantially as she testified she was on the trial. This testimony was objected to on the ground that it was self-serving, hearsay, and irrelevant. There was no error in the admission of this testimony. It was the theory of appellant that Mrs. Fox was not injured at the time and in the manner alleged by appellee, and evidence in support of this theory was offered prior to the introduction of the testimony complained of. Dr. Pearson had testified, in substance, that some three or four months subsequent to the alleged accident he examined Mrs. Fox; that she then stated to him that she was in good health and he passed her as a safe risk for life insurance. Other witnesses said that after the accident in which Mrs. Fox claims to have been injured, and up to a short time before the filing of this suit, she made no complaint whatever of having been injured while a passenger on appellant's train. Under these circumstances, the declarations admitted were competent in rebuttal, as has been held by several of the decisions of the appellate courts of this state. Railway Company v. Patterson, 47 S. W. 686; Railway Company v. Hawk, 30 Tex. Civ. App. 142, 69 S. W. 1037; Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198. What is here said disposes also of appellant's fourteenth and fifteenth assignments of error.

The sixteenth, seventeenth, eighteenth, nineteenth, and twentieth assignments disclose no material error, and will also be overruled.

[5] The twenty-first and twenty-second assignments of error complain that the trial court erred in refusing to grant appellant a new trial because the verdict of the jury was against the great weight of the evidence, was against the law, and was excessive. In view of the evidence, as we see it, and numerous decisions of our appellate courts, we would not be justified in sustaining either of these contentions. Mrs. Fox testified: "During the first two months after I was hurt there was times that I suffered a good deal, and there was times I didn't suffer so much, but gradually and gradually on I have gotten worse and have got so— the first two months I at times felt a good deal better than I did at other times, and at other times suffered very much, and at other times I would get to feeling a little better at times; during that two months I suffered in my back, just a hurting in my back that almost made me sick, at times worse than others. When I started on the journey to see my sister the conditions of my health was awful fine; it was fine, good health; I weighed 158 pounds; I am 51 years old. Commencing then and going up to the present time, after I came home up to the present time, I just gradually, it seemed like, seemed like I began to go down, to keep on gradually, gradually going down, and it was my back. I suffered in my back up to the top of my head; my head now hurts so bad I cannot hardly stand it, and it goes plumb to the top of my head; I am so nervous now I do not know what to do; I am able to be up but a little of my time; I am not able to be up this evening; I weighed this morning 107½ pounds; and when I went on this journey I weighed 157. From the time of the injury up to the present time, commencing when I got worse, I almost hate to tell it, I never have suffered as much in my life as I have since I have been in this condition I am in." She further testified that after the first two months following the injury up to the time of the trial she had not been able to work any; that she was confined to the bed most of the time; that Dr. Williams of Celeste and Dr. Smith of Greenville had been treating her. She further testified: "When I was first hurt my opinion was I was hurt very bad at the start and gradually after while at times I would revive up some and think maybe it would wear away, and that was one of the mainest reasons why I did not give myself a more attentive physician and treatment sooner than I did. At times I felt like and hoped it might pass away; tried to be in hopes for a time, and it gradually and gradually dug along with me until I am where I am now; I am not able to do anything. I have lost now all hopes of ever getting over it, and I did for a while have slight hopes at times that I would recover, but I have not now got them sort of hopes. I have lost hopes as my strength and condition is like it is."

Dr. Eugene Williams, among other things, testified that he made an examination of Mrs. Fox on the 14th day of May, 1911, and found tenderness upon pressure up and down

the spinal column, "especially at the fifth lumbar sacral vertebra extending up to the eighth dorsal vertebra and found a lateral curvature of the spine to the right; that the last time he examined Mrs. Fox was the night before the day he gave his testimony, and that while examining her and making a pressure of the spine her pulse rate increased from 10 to 15 beats; that when he was first called to see Mrs. Fox she didn't look like she was sick, looked like a tolerably fleshy woman of robust health, but that she did not look so well at the date of the trial; that the different times he had examined Mrs. Fox she complained of the same tenderness in the back and complained of a burning up in the top of the head"; that pressing upon a painful nerve would naturally make a person breathe a little faster and would make a reflex action of the heart; that a person cannot feign that condition; that he would call that symptom a subjective symptom. This witness further testified: "If a person was standing up and not expecting it and there should be a double movement of the— Say a person was standing on this table here and without expecting the table to move, and the table should be suddenly jerked forward or backward, and when the table jerked forward they tried to catch something, and when it jerked back the party is thrown to the floor and felt a severe pain at the time and then momentarily loses her mind, kinder stunned or addled or something, and then in a very short time the party gets up and they begin to suffer all over and the pain finally settled in the back, and that condition continues on getting gradually a little worse, as to what would be the probable result of an accident of that kind with reference to producing injury to the nervous system, I would think it is very likely the accident would cause a deranged condition of the nervous system; that if he is given a history of an accident as above detailed, and if on the 14th day of May he found such person in the condition he found Mrs. Fox in on that date, and if he had nothing else except a history of this accident and the pain more than the suffering, he would say that it was due to the injury that she received; that an injury of that character is sometimes rapid and sometimes slow in developing; that he did not think there is anything unreasonable from the standpoint of a physician that a person receiving an injury like the one detailed on or about the 22d or 23d of December, 1910, should go along and not lose any great amount of flesh until along in May of the following year; that he did not think it anything uncommon to find, in a person injured as indicated, the results found in Mrs. Fox; that his honest judgment was that, while Mrs. Fox's condition would not kill, she would never get well; that he believed her condition permanent." To the same practical effect is the testimony of Dr.

Smith strongly corroborated in many particulars by the testimony of Dr. Gregory.

The jury were the exclusive judges of the credibility of the witnesses and the weight to be given their testimony, and no matter what might have been the views of this court in regard to the same as an original proposition, the fact remains that there is substantial testimony which tends to support the verdict. Manifestly there is not such a preponderance of evidence against the verdict, either as to the liability of appellant or the amount thereof, as to justify this court in saying that it is clearly wrong. So that, whether appellee's wife was injured through the negligence of appellant substantially as alleged, and that appellee was damaged thereby in the amount awarded, were questions of fact for the determination of the jury. Many verdicts based upon no stronger testimony than that found in the record in this case, and for as large or larger amounts, have been upheld by the courts of this state. The testimony is sufficient to warrant the jury's findings, as evidenced by their verdict, that Mrs. Fox, as a result of the injury inflicted upon her, is suffering with neurasthenia, a serious nervous disease; that she has and will continue to suffer much physical and mental pain; that before the injury she was a strong and healthy woman; that at the date of the trial of this case her weight had been reduced as a consequence of her injury from about 158 pounds to 107½ pounds; that she was very feeble; and that her condition is permanent.

We believe it is our duty to affirm the judgment of the court below, and it is accordingly so ordered.