ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. MOORE. (No. 1371.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 1, 1915. Rehearing Denied Jan. 28, 1915.)

1. MASTER AND SERVANT ⬥⟹286—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for injuries to a member of a railroad switching crew caused by a collision between cars standing on a side track and cars kicked upon such track, on which plaintiff was riding, evidence *held* sufficient to make a question for the jury as to the negligence of the en

gineer or the foreman of the switching crew with respect to the violence with which the cars were kicked; and hence an instruction submitting the question of negligence in that respect was not erroneous as leading the jury to believe that in the court's opinion there was evidence of negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⊚⟶286.]

2. APPEAL AND ERROR ⊚⟶750—RECORD—MATTERS PRESENTED FOR REVIEW.

Where assignments of error complaining of the overruling of objections to testimony referred to a bill of exceptions not in the record, they would be disposed of with reference only to objections and exceptions noted in the statement of facts, as authorized by the rules.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–3083; Dec. Dig. ⊚⟶750.]

3. APPEAL AND ERROR ⊚⟶260—RESERVATION OF GROUNDS OF REVIEW—EXCEPTIONS.

The overruling of an objection to testimony cannot be reviewed, where no exception to the court's action appears to have been taken.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1503–1515; Dec. Dig. ⊚⟶260.]

4. MASTER AND SERVANT ⊚⟶270—ACTIONS FOR INJURIES—ADMISSIBILITY OF EVIDENCE.

In an action for injuries to a member of a railroad switching crew, claimed to have been due to the violence with which cars were kicked upon a side track, the testimony of the engineer of the switching crew that in kicking the cars he always used his judgment was admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. ⊚⟶270.]

5. TRIAL ⊚⟶85—OBJECTION TO TESTIMONY.

An objection goes to the whole of the testimony complained of, and, if a part is admissible, the objection will not be considered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222, 223–225; Dec. Dig. ⊚⟶85.]

6. EVIDENCE ⊚⟶126—RES GESTÆ—DECLARATIONS FOLLOWING TRANSACTION.

In an action for injuries caused by the violent manner in which cars were kicked upon a side track in switching, the statement of the injured employé, three or four minutes after the collision between such cars and standing cars, to the foreman of the switching crew, that he ought not to kick the cars so hard, and that he hurt himself and wrenched his back, and that the brake was bad, and he could not hold the cars, was admissible, as not only such declarations as accompany a transaction, but also such as are made under circumstances raising a reasonable presumption that they were spontaneous utterances of thoughts created by or springing out of the transaction and so soon thereafter as to exclude the presumption that they are the result of premeditation or design, are admissible as parts of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 372–376; Dec. Dig. ⊚⟶126.]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by R. W. Moore against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Appellee was one of a switching crew engaged in moving cars in appellant's yards at Tyler. One Phillips was foreman of the crew, and one Beaird was the engineer in charge of the locomotive used in switching the cars. During the nighttime of November 17, 1913, immediately after a string of several cars had been "kicked" to go onto a side track, appellee, in the discharge of his duty, mounted one of them for the purpose of controlling the speed thereof, by operating a brake thereon, as it approached other cars already parked on the side track. At the time he mounted it the car was moving at a speed of from five to eight miles an hour. The side track was downgrade toward the cars parked on it; and notwithstanding appellee's effort to check the speed thereof, by means of the brake, the string of kicked cars was moving at a rate of from 12 to 14 miles an hour when same collided with the other cars on the side track. Appellee claimed he suffered serious injury to his person as a consequence of the collision, and by the suit resulting in the judgment in his favor, from which this appeal is prosecuted, sought a recovery of damages against appellant, on the ground that it had been guilty of negligence in that it had permitted the brake he endeavored to operate to become and be defective, and in that it had caused the string of cars to be kicked with unusual and unnecessary violence.

The defect claimed to exist in the brake was shown by testimony of appellee, as a witness in his own behalf, as follows:

"Hand brakes are on a round wheel, and you work them with your hands. There is what they call a 'brake wheel.' You work the brakes with your hands. You set them up as tight as you can with your hands, and then you have a stick, and you can set them up five or six notches tighter with the stick than you can with your hands. The brakemen here usually and ordinarily carry brake sticks. * * * Those brake sticks are about two feet long. They are pick handles. * * * When a brake is set up by turning the wheel, and you want to release the brake (that is to say, you want to take your hands off of it, but you want the brake to remain set up and want the power to remain on), then that is done with a dog right down at your foot. There is a ratchet wheel on the brake staff that is stationary, and the dog comes right out here, and you have to work it with your foot while you are pressing it, and every time you go to take slack you shove it in; then you pull again. That dog works in notches on the ratchet wheel. The ratchet wheel has notches, or cogs, you might call them, all around it. The dog itself is not attached to the ratchet wheel, but it is attached to the top of the car. The dog is not stationary, but it works backwards and forwards. * * * I mounted the cars and went on top with my lamp on my arm. I set the ratchet and got the brake and started to setting it, started to pulling it on, and got up there and twisted it around, and seen the cars was not slowing down any, and I applied my stick, and they still kept going; then I went to fasten the dog, and the brake staff had come up, and the dog went underneath it. The brake staff, I mean, would rise. When the brake staff would rise, that would bring the ratchet wheel up with it. I don't know what it is that makes or permits a brake staff to rise when you wind it up, unless the key is gone from the bottom of it. * * * There is an apparatus or

appliance in the shape of a brake key underneath and down at the bottom or near the bottom end of the brake rod that holds it in place and prevents it from rising as you operate it. * * * Ordinarily, when a brake is in good working order, and when you wind it up, the brake rod ought not to rise as that one did. It is not intended to rise. * * * When I applied the stick, the brake staff raised up. I tried only once to fasten that with the dog. The dog had to go underneath at this time, and I did not have time to throw it out. Then, in the meantime, by the time I did that and discovered that the dog would not work, I was right on those cars—right close to them. When I saw the brake would not work and that the dog would not hold, I did not then turn the brake loose and let it go and protect myself because I was scared to, because I was scared the stick would knock me off. * * * If I had turned the stick loose, I don't know what would have become of the stick; don't know where it would have went to. It would have flew off somewhere if I could have turned it loose, but I could not; I was scared to turn it loose, scared it would hit me."

With reference to the manner, etc., in which the cars were kicked, there was testimony as follows:

Appellee, as a witness, testified:

"The cars were kicked pretty hard. The foreman give the signal, and the engineer taken the foreman's signal to kick them."

Appellant's witness McKenzie on his cross-examination testified as follows:

"Phillips, the night foreman, was acting as night foreman on this night of November 17th. The night foreman is the man who is supposed to give the signals, and so forth, for the switching, and when to come backwards and forwards. * * * I don't remember whether Mr. Earl, the superintendent, was down there in the yard on the night of November 17, 1913. I could not say whether it was the night of the 17th, but he was down there one night, and just about that time. Q. Don't you remember that the night you say Mr. Earl was down there was about this time—that he complained to the men there in the yard of the rough manner in which the cars were being kicked and handled, and the rapidity with which they were being shot over the track? A. Well, Mr. Earl was there, and he was talking to Phillips; that is, the foreman. After he left he was telling— Q. Well, did you yourself hear anything that Mr. Earl said to Mr. Phillips that night, or to any of the switching force down there, with reference to the manner of handling the cars that night? A. No, sir; as a matter of fact, the cars were not handled with unusual roughness on that night. That is the way Phillips kicked the cars ever since he worked the engine. He kicked them no harder that night than he did any other night. Q. Wasn't Phillips—the way in which he had the cars handled, and the directions he gave for the cars being kicked—wasn't he an unusually rough man in the handling of the cars? A. Yes, sir. He gave the signals, and we obeyed; or the engineer and the fireman and the men who had charge of the operation of the cars obeyed the signals of the foreman who gave them. Q. Well, didn't he that night—the night this man said he was injured, whatever particular night of the week or the month it might have been—the night he was injured, didn't Phillips on that night and the other nights, didn't he have the cars and cause the cars to be kicked with more violence and speed and momentum than was usual and customary down there in those yards? A. Well, I don't see as he did. I don't see no difference that night and no other night. Q. I ask you how Phillips ordinarily and customarily had the cars handled and give the signals? Didn't he have the cars kicked and handled in a manner that was unusually and unnecessarily rough? A. Yes, sir. Q. Now, the particular night Mr. Earl was down there and you saw him talking to Phillips—on that particular night, whatever night that was—Phillips was handling the cars and having them kicked with unusual speed and violence and roughness that night, wasn't he? A. I think he was. Yes, sir."

Appellant's witness Beaird, the engineer in charge of the locomotive, on his direct examination testified:

"In regard to the switching of the cars in the yards there at night, in the movement of my train (engine?) and the cars, I switch them in keeping with and am governed by lamp signals. * * * When I get these signals, if I think they are not as they should be, I use my judgment. If I think they are all right, I execute them like they give them. There was nothing unusual on that night, that I can recall to mind, regarding the unusual manner in which the cars were handled by my crew. I don't remember of anything."

On his cross-examination the witness testified:

"I think this man Phillips was the night foreman of the switching crew at that time, but I am not exactly certain about it. The foreman of the switching crew is the man who ordinarily gives the signals for the movement of the cars, when he is in sight. Q. Isn't it a fact that Phillips ordinarily and customarily had the cars kicked and moved with unusual violence and speed and momentum? A. He tried to; yes. And but for the intervention of my own judgment, when I felt like he was doing it too violently, but for that fact, he would have had the cars kicked all the time too violently. When it come to kicking cars, I always use my own judgment. If I were kicking cars in on the side track and letting them run down a certain distance and stopping them, the train switching the cars and kicking them around, and if it became necessary to kick some more down that same track, frequently I would not know just how far the cars would have to run. Q. Consequently, when he gave the signal to come back, kick them a certain distance or certain speed, you had to depend very largely upon the foreman's signals at that time? A. Yes. Q. It is a fact, is it not, that some of the time you have to be governed by what signals you got from the foreman, because you could not tell, from where you were, just exactly how far those cars would have to run? A. Yes, I couldn't tell."

The evidence was sufficient to show that appellee, without fault on his part, was injured, as alleged, because of negligence on the part of appellant, and we so find.

Marsh & McIlwaine, of Tyler, and E. B. Perkins and D. Upthegrove, both of Dallas, for appellant. Johnson & Edwards, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] Among the instructions given by the court to the jury was the following:

"If you shall find that the defendant's employés, Phillips and Beaird, or either of them, caused the car in question to be sent or kicked onto the sandy track with great and unnecessary violence, and if you find that such act, if any, on their part, was negligence, and that they could and would, by the use of ordinary care, have known that plaintiff was in danger of being injured by reason of the force

with which said car would come in contact with other cars on said track, then if you shall find that as the direct and proximate result of the great and unnecessary speed, if any, with which the cars were kicked on said sandy track, the plaintiff was jerked and wrenched and injured while he was holding to the brake to lessen the speed and violence of the collision of said car with others on said track, you will find for the plaintiff, and, unless you do so find, plaintiff cannot recover by reason of the cars coming in contact with other cars on said track."

Before the charge was read to the jury, appellant objected to the portion thereof set out above, on the ground that it was misleading in that it was calculated to "lead the jury to believe that in the opinion of the court" there was evidence to show that Beaird or other of appellant's employés had been guilty of negligence in the manner in which the cars were kicked, whereas appellant contended there was no such evidence. The first assignment is based on the action of the court in overruling said objection.

It is believed there was testimony sufficient to support findings: (1) That under the circumstances shown a reasonably prudent person would not have kicked the cars, nor caused same to be kicked, as violently as they were kicked; (2) that Phillips, the foreman of the switching crew, whose duty it was to signal the engineer when and how hard to kick the cars, signaled him to kick them as they were kicked; and (3) that the engineer, either in compliance with the signal, or in disregard thereof and of his own volition, kicked them as he did. If the jury might have found that the engineer kicked the cars, as he did, in compliance with signals given him by the foreman, they might have concluded that the latter was guilty of negligence; and, if they might have found that the former kicked the cars as he did of his own volition, they might have concluded that he was guilty of negligence. Therefore we are of opinion the court did not err when he overruled the objection urged to the instruction.

[2] Three other assignments are presented in the brief. Each of them is based on the action of the trial court in overruling an objection made by appellant to testimony specified, and each refers to "defendant's bill of exceptions No. 2," which is not in the record sent to this court. The assignments, therefore, must be disposed of with reference only to objections and exceptions noted in the statement of facts as authorized by the rules.

[3] The complaint in one of the three assignments is that the court erred in overruling appellant's objection to certain testimony given by the witness McKenzie on his cross-examination by appellee. As it does not appear that the action of the court was excepted to, the ruling should not be reviewed here. McFaddin v. Prater (Sup.) 3 S. W. 306; Foley v. Railway Co., 50 Tex. Civ. App. 218, 108 S. W. 169, 110 S. W. 96.

[4, 5] In another of said three assignments appellant complains that the court, over its objection that same was irrelevant and immaterial, permitted the witness Beaird, on his cross-examination by appellee, to give certain testimony. We think the court was justified in overruling the objection on either of two grounds: (1) That it was too general (1 Wig. on Ev. § 18; Railway Co. v. Smith, 50 Tex. Civ. App. 10, 108 S. W. 996); and (2) that a part of the testimony objected to, to wit, "when it come to kicking cars, I always use my judgment," etc., was admissible. The rule is that if an objection "goes to the whole of the testimony complained of, and a part is admissible, the objection to the evidence will not be considered." Dolan v. Meehan, 80 S. W. 101.

[6] Cross-examining appellee, appellant proved by him that he continued to work during the night of November 17th, after the collision in which he claimed to have been injured occurred, and during several days between that date and November 26th, when he resigned the position he held with appellant. Appellant further proved by appellee that he suffered from a stricture, and that in October, before the accident occurred, he underwent an operation for same at a point on his person near the place where a femoral hernia developed after the accident. And appellant further proved by appellee that, when he resigned on November 26th, he never said anything to its agents, to whom he tendered his resignation, about having been hurt. On his re-examination by his own counsel, the court permitted appellee, over appellant's objection that same was "hearsay, self-serving, and not res gestæ," to testify as follows:

"Q. Did you make any statement to Mr. Phillips, the night foreman, that night, after you got down from the car and came back to where he was, with reference to what happened on the car? A. Yes, sir. Q. Now, tell the jury, as near as you can, what you said to him. A. When I got down I went up there and said: 'Phil, you oughtn't to be kicking these cars so damn hard. I hurt myself back there while ago.' He said: 'How?' I said: 'I wrenched my back there while ago. The brake was bad, and I couldn't hold those cars, and you kicked them entirely too hard.' He said: 'Are you hurt bad?' I said: 'No; I wrenched my back a little, I think.' He said: 'Well, shall I make out a statement?' I said: 'No; there is no use of making out a statement, I don't think. I will let you know between now and morning.'"

Other testimony in the record shows that the conversation just detailed took place within three or four minutes after the collision between the cars occurred.

It is believed the court did not err when he overruled the objection urged to the testimony. We are not prepared to hold it was not admissible in rebuttal of inferences deducible from testimony drawn by appellant from appellee while cross-examining him (Railway Co. v. Patterson, 47 S. W. 686; Railway Co. v. Fox, 156 S. W. 924, Railway Co. v. Hawk, 30 Tex. Civ. App. 142, 69 S. W.

1040); but, if it was not admissible on that ground, we think it was admissible under the rule recognized in this state, which admits, as parts of the res gestæ, "not only such declarations as accompany the transaction, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design." Railway Co. v. Hall, 80 S. W. 133, 34 Tex. Civ. App. 535; Railway Co. v. Anderson, 82 Tex. 519, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway Co. v. Gray, 95 Tex. 428, 67 S. W. 763; Railway Co. v. Vance, 41 S. W. 169.

The judgment is affirmed.

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes